Curia, per Butler, J.
The effect of Brpad’s will, was clearly to vest in his executor, Dangerfield, the legal title to his estate. At the testator’s death the executor had a right to take possession of the property and use it for the purpose of paying the debts of the estate, and then to do with it as he pleased. Whether he would have acted in good faith in appropriating it to himself, instead of obeying strictly the directions of the will, is a question upon which a court of law would not undertake to decide. If he gave up the practical dominion and control of the negroes, and left them to their own self-government, I was of opinion they were liable to seizure *203 under the act of 1800. This was a question of fact that belonged to, and was fairly submitted to the jury. Assuming that the negroes were liable to seizure, the next question was, did the plaintiff acquire a legal title to the negroes by seizure. My charge analysed, was that the question presented itself in three points of view: 1. Did the plaintiff have an actual tangible possession of the negroes ? This is the most obvious- and general form of seizure. 2. Did she so far subjugate them to her power and control as to make them virtually her prisoners ? This might have been effected without a voluntary surrender on the part of the negroes, and depended on the power of Singletary to enforce his authority and secure his captives. 3. Had the negroes voluntarily surrendered themselves as captives to be taken to Charleston, under Singletary’s proclamation that they must go? They were capable of doing so. If the jury should come to an affirmative conclusion on either of these propositions, I instructed them to find for the plaintiff. All the questions in the case were submitted under proper instructions— and the verdict of the jury cannot be disturbed.
O. M. Smith & Hunt, for the motion.
Petigru & Lesesne, contra.
The motion is dismissed.
Gantt, O’Neael, Evans and Earle, Justices, concurred.